# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| ALTHEA LEGGETT,<br>    Plaintiff,<br><br>v.<br><br>ANDREW M. SAUL,<br>*Commissioner of Social Security*,[1]<br>    Defendant. | CIVIL ACTION NO. 1:18-00410-N |

## MEMORANDUM OPINION AND ORDER

Plaintiff Althea Leggett brought this action under 42 U.S.C. § 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[2] Upon consideration of the parties' briefs (Docs. 13, 15) and those portions of the administrative record (Doc. 12) (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])") relevant to the issues raised, and with the benefit of

---

[1] Having been sworn in on June 17, 2019, Commissioner of Social Security Andrew M. Saul, as successor to Acting Commissioner Nancy A. Berryhill, is automatically substituted as the Defendant in this action under Federal Rule of Civil Procedure 25(d). (*See* https://www.ssa.gov/agency/commissioner.html & https://blog.ssa.gov/social-security-welcomes-its-new-commissioner (last visited Jan. 16, 2020)). This change does not affect the pendency of this action. See 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office."). The Clerk of Court is **DIRECTED** to update the docket heading accordingly.

[2] "Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program." *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 42 U.S.C. § 1382(a)).

oral argument, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[3]

## I. *Procedural Background*

Leggett filed the subject application for SSI with the Social Security Administration ("SSA") on March 28, 2013. After it was initially denied, Leggett requested a hearing before an Administrative Law Judge ("ALJ") with the SSA's Office of Disability Adjudication and Review. A hearing was held on March 12, 2015. On April 24, 2015, the ALJ issued an unfavorable decision on Leggett's application, finding her not disabled under the Social Security Act and thus not entitled to benefits. (*See* R. 140 – 154).

Leggett requested review of the ALJ's unfavorable decision with the Appeals Council for the Office of Disability Adjudication and Review. On August 11, 2016, the Appeal Council issued an order granting the request for review, vacating the ALJ's unfavorable decision, and remanding Leggett's case to the ALJ for a new decision, with instructions to specifically address certain issues. (R. 159 – 162). On remand, the ALJ held another hearing on September 12, 2017; on November 8, 2017, he issued a second unfavorable decision of Leggett's application. (*See* R. 10 – 30).

The Commissioner's decision on Leggett's application became final when the Appeals Council denied her request for review of the ALJ's second unfavorable

---

[3] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs. 19, 20).

decision on July 26, 2018. (R. 4 – 8). Leggett subsequently brought this action under § 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is ' "supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." ' " *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam) (internal citation omitted) (quoting *Lewis v. Callahan*, 125 F.3d

1436, 1439 (11th Cir. 1997))). In reviewing the Commissioner's factual findings, the Court " 'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). " 'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.' " *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[4]

---

[4] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir.

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [The Court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts."). "In determining whether substantial evidence exists, [a court] must…tak[e] into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). *See also McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("We are constrained to conclude that the administrative agency here…reached the result that it did by focusing upon one aspect of the evidence and ignoring other parts of

---

1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

the record. In such circumstances we cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence. The review must take into account and evaluate the record as a whole.").[5]

---

[5] Nevertheless, "district court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). Additionally, the Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. See *Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford*, 363 F.3d at 1161 (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. See *Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. See *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists,

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g., Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

---

without further argument or discussion, constitutes abandonment of that issue').").

In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").

> Eligibility for … SSI requires that the claimant be disabled. 42 U.S.C. § … 1382(a)(1)-(2). A claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § … 1382c(a)(3)(A).

*Thornton v. Comm'r, Soc. Sec. Admin.*, 597 F. App'x 604, 609 (11th Cir. 2015) (per curiam) (unpublished).[6]

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

---

[6] In this Circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[7]

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the

---

[7] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

When the ALJ denies benefits and the Appeals Council denies review of that decision, the Court "review[s] the ALJ's decision as the Commissioner's final decision." *Doughty*, 245 F.3d at 1278. But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262. Nevertheless, "when the [Appeals Council] has denied review, [the Court] will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998).

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ determined that Leggett had not engaged in substantial gainful activity since the application date, March 28, 2013. (R. 15).[8] At Step Two, the ALJ determined that Leggett had one severe impairment: borderline intellectual functioning. (R. 15 – 17). At Step Three, the ALJ found that Leggett did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (R. 13 – 16).

At Step Four,[9] the ALJ determined that Leggett had the residual functional

---

[8] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) (citing 20 C.F.R. § 416.202–03 (2005)).

[9] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).
>
> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant

capacity (RFC) "to perform a full range of work at all exertional levels[10] but with the following nonexertional limitations: [she] is limited to simple routine repetitive tasks with occasional contact with co-workers, supervisors, and the general public with few workplace changes introduced gradually with occasional reminders to stay on task." (R. 20 – 28). The ALJ then determined that Leggett had no past relevant work. (R. 28). At Step Five, after considering testimony from a vocational expert, [11] the ALJ found that there exist a significant number of other jobs in the national economy that Leggett could perform given her RFC, age, education, and work experience. (R. 29). The ALJ thus found that Leggett was not under a disability as defined by the Social Security Act during the relevant adjudicatory period. (R. 30).

---

> work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted).

[10] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. *See also* 20 C.F.R. § 416.967.

[11] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

## IV. *Analysis*

### A. Dr. Tocci's Medical Opinions

Leggett first argues that the ALJ reversibly erred by giving improper consideration to the medical opinion of examining psychologist Dr. Nina Tocci.[12]

---

[12] " 'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions.' " *Winschel*, 631 F.3d at 1178-79 (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "There are three tiers of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (unpublished) (citing 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2)). "In assessing medical opinions, the ALJ must consider a number of factors in determining how much weight to give to each medical opinion, including (1) whether the physician has examined the claimant; (2) the length, nature, and extent of a treating physician's relationship with the claimant; (3) the medical evidence and explanation supporting the physician's opinion; (4) how consistent the physician's opinion is with the record as a whole; and (5) the physician's specialization. These factors apply to both examining and non-examining physicians." *Eyre v. Comm'r, Soc. Sec. Admin.*, 586 F. App'x 521, 523 (11th Cir. 2014) (per curiam) (unpublished) (internal citations and quotation marks omitted) (citing 20 C.F.R. §§ 404.1527(c) & (e), 416.927(c) & (e)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citation omitted). While "the ALJ is not required to explicitly address each of those factors[,]" *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam) (unpublished), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel*, 631 F.3d at 1179. An "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam).

"The opinion of a treating physician…'must be given substantial or considerable weight unless "good cause" is shown to the contrary.' " *Phillips*, 357 F.3d at 1240 (quoting *Lewis*, 125 F.3d at 1440)). On the other hand, the opinions of non-treating physicians, such as Dr. Tocci's, "are not entitled to deference …" *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam). *Accord Everett v. Soc. Sec. Admin., Comm'r*, 777 F. App'x 422, 425 (11th Cir. 2019) (per curiam) (unpublished) ("Opinions by one-time examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Machuat v. Acting*

The undersigned disagrees.[13]

> The ALJ addressed Dr. Tocci's medical opinions as follows:
>
> The undersigned gives partial weight to the opinions of Dr. Tocci. (Exhibits D2F, D9F, D16F). Initially, it should be noted that the undersigned gives little weight to the older opinions of Dr. Tocci from 2009 and 2014. Dr. Tocci examined the claimant on three occasions, first in 2009 and second in 2014. In 2009, the claimant obtained a Full Scale IQ of 44, and Dr. Tocci opined that the claimant would be unable to engage in structured employment. (Exhibit D2F). In 2014, Dr. Tocci again performed IQ testing with the claimant and found her Full Scale score to be 55. At this testing, Dr. Tocci noted the results to be "questionable" and malingering was considered but ruled out. Dr. Tocci suggested that the claimant could have a specific learning disability that was never identified or remediated. Dr. Tocci opined that the claimant would not be capable of engaging in work that included verbal instruction, contact with the public , or discourse with co-workers and supervisors. (Exhibit D9F). Dr. Tocci's initial opinions did not explain the disparity in the IQ scores from the claimant's earlier years to the present. Further, during the 2013 hearing, [testifying non-examining medical expert] Dr. Garner noted that the claimant was not presenting in the way that Dr. Tocci described in the

---

*Comm'r of Soc. Sec.*, 773 F. App'x 490, 492 (11th Cir. 2019) (per curiam) (unpublished) ("As a one-time examiner, Dr. Rodriguez's opinions were unentitled to deference." (citing *McSwain*, 814 F.2d at 619)); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (per curiam) (unpublished) ("[T]he opinions of non-treating examiners are not entitled to deference or special consideration." (citing *McSwain*, 814 F.2d at 619)); *Santos v. Soc. Sec. Admin., Comm'r*, 731 F. App'x 848, 857 (11th Cir. 2018) (per curiam) (unpublished) ("An ALJ generally gives an opinion from an examining physician greater weight than a non-examining physician, but the agency's rules do not provide that an examining physician's opinion may receive 'controlling weight' as a treating source might.").

On January 18, 2017, the SSA substantially revised the regulations governing how the Commissioner considers medical opinions. However, those revisions apply only to claims filed on or after March 27, 2017, and are therefore inapplicable to Wilson's present applications. *See* 20 C.F.R. § 416.920c.

[13] As the Commissioner correctly noted, Leggett's brief makes passing argument suggesting that Dr. Tocci should have been considered a treating physician, and her opinion given "controlling" weight. However, at oral argument, Leggett conceded that Dr. Tocci was not a treating physician.

record. Moreover, and more recently, following her examination in 2017, Dr. Tocci opined that the claimant appeared to be functioning within the borderline range, which is more consistent with the record as a whole. (Exhibit D16F). However, she also found that the claimant would have difficulty learning new tasks and completing tasks to specification in a timely manner, a finding which is not supported by the evidence, including the claimant's own testimony that she can prepare meals such as fried chicken. As a result of the varying opinions by Dr. Tocci, only partial weight is given, with more weight assigned to her more recent conclusion that the claimant is functioning in the borderline range, notably, which is consistent with the opinion of Dr. Garner and consistent with the record as a whole.

(R. 28).

The Commissioner correctly observes that Leggett largely "fails to discuss the ALJ's reasons for the weight assigned to Dr. Tocci's opinion, nor does she articulate any allegation that those … reasons are not supported by the record." (Doc. 15, PageID.779). For the most part, Leggett simply proffers her own narrative summary of Dr. Tocci's notes and opinions and asks the Court to draw its own conclusions from them. However, this Court cannot decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's, *Winschel*, 631 F.3d at 1178, and Leggett gives the undersigned no reason to believe that the ALJ failed to consider the evidence as a whole in reaching his decision. Moreover, the ALJ stated with sufficient particularity the weight given to Dr. Tocci's opinions and the reasons therefor, and those reasons are supported by substantial evidence.

The ALJ rejected Dr. Tocci's opinions from her 2009 and 2014 examinations because they "did not explain the disparity in the IQ scores from [Leggett]'s earlier years to the present." (R. 28). As the ALJ noted, Leggett had "a history of finishing

12th grade in special education, earning mostly A's, B's, and C's, and has two valid IQ scores of 66 and 63, prior to filing for social security[,]" but, "[s]ince her application for benefits has been filed, although there has been no documented head injury or substance abuse, [her] IQ scores have plummeted, and the validity of these scores have been called into question." (R. 18). Such a dramatic drop in IQ scores with no apparent medical explanation is itself cause for suspicion, *cf. Hodges v. Barnhart*, 276 F.3d 1265, 1268 (11th Cir. 2001) ("[A]bsent evidence of sudden trauma that can cause retardation, … IQ tests create a rebuttable presumption of a fairly constant IQ throughout [a social security claimant's] life."), and the medical opinion evidence of record provided additional support to question the validity of the drop. As the ALJ noted, Dr. Tocci herself stated the results of her 2014 examination were "questionable," although she ruled out malingering. (*See* R. 23). Dr. Donald Blanton, who conducted a consultative examination of Leggett in June 2013, tested Leggett as having "a full scale IQ score of less than 40" but concluded that Leggett was " 'untestable' due to lack of effort" and that she was "malingering." (R. 22). Dr. Blanton also opined that Leggett's 66 Full Scale "IQ scores obtained while in school w[as] likely valid." (R. 22). Finally, psychologist Dr. Sydney Garner, who testified as a medical expert at both of Leggett's ALJ hearings, testified at one of the hearings that Leggett "was not presenting in the way that Dr. Tocci described in the record." (R. 28). Accordingly, substantial evidence supports the ALJ's decision to reject Dr. Tocci's more extreme 2009 and 2014 opinions in favor of her milder 2017 opinion, which found Leggett "to be functioning within the borderline

range of intellectual ability" and was "more consistent with the intellectual scores earned during [Leggett]'s school years." (R. 26).

As for the ALJ's decision to reject that part of Dr. Tocci's 2017 opinion finding that Leggett "would have difficulty learning new tasks and completing tasks to specification in a timely manner" (R. 28), the ALJ correctly noted that finding was not consistent with Leggett's own report activities of daily living, which included simple activities like cleaning, shopping in stores, watching movies, and attending church, and more complex tasks like "prepar[ing] meals such as fried chicken" (R. 28), "babysit[ting] nieces" (R. 26), and "successfully raising three children on her own for years" (R. 27 – 28). Moreover, the record indicated that Leggett had "performed simple work before stopping secondary to allegations of physical pain[,]" rather than lack of intellectual ability; indeed, she "initially reported that she had stopped working in December 2009 when her temporary job ended." (R. 25).[14]

In sum, Leggett has failed to show that the ALJ committed any error in

---

[14] Leggett also suggests the ALJ erred by giving "greatest weight" to the medical opinion of Dr. Garner, a non-examining medical expert who testified at both of Leggett's ALJ hearings. It is true that "[t]he opinions of nonexamining, reviewing physicians, ... when contrary to those of the examining physicians, are entitled to little weight, and standing alone do not constitute substantial evidence." *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam). However, as the undersigned has explained in a prior opinion, " '[i]f an ALJ has shown good cause to reject the opinion of a treating or examining physician, the ALJ may then properly rely on the opinion of a non-examining medical source if it is consistent with the objective evidence of record.' " *Smith v. Berryhill*, Civil Action No. 1:17-00516-N, 2018 WL 5624267, at *7 (S.D. Ala. Oct. 30, 2018) (quoting *Ethridge v. Berryhill*, No. 1:16CV788-WC, 2017 WL 4780619, at *5 (M.D. Ala. Oct. 23, 2017), and citing additional authority). Because the ALJ gave valid reasons to reject Dr. Tocci's 2009 and 2014 opinions, and a portion of her 2017 opinion, it was no error for the ALJ to give greater weight to Dr. Garner's opinions, which were found to be "supported by the record as a whole…" (R. 27).

considering and weighing Dr. Tocci's medical opinions.

## B. VE Hypothetical

"At step five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform. An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert. In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Winschel*, 631 F.3d at 1180 (citation and quotation omitted).

At Step Five in Leggett's case, the ALJ asked the VE the following hypothetical question, which included all of the limitations assigned in the RFC:

> If an individual were not able to work in a job – for my second hypothetical – simple, routine, repetitive tasks; occasional contact with coworkers, supervisors, general public; with few workplace changes introduced gradually; with occasional reminder to stay on task. Would such an individual be able to do any of those jobs you've identified?

(R. 70). The VE responded to this second hypothetical that such a person would be able to perform all three jobs the VE identified in response to the first hypothetical, and specifically noted that "occasional cueing … would not pose an unreasonable accommodation." (R. 70).[15]

Leggett's second, and final, claim of reversible error is that the second hypothetical was "vague because the ALJ does not define how she is using the word

---

[15] The ALJ's first hypothetical to the VE omitted the need for an "occasional reminder to stay on task" but otherwise imposed the same limitations as the second hypothetical. (R. 68 – 69).

'occasional.' " (Doc. 13, PageID.771). As Leggett puts it:

> As defined by the DOT [Dictionary of Occupational Titles], occasional means up to 1/3 of the day. By that definition, in this hypothetical, Plaintiff would need reminders to stay on task that would occur up to 2.5 hours per day. Even if we can assume that the vocational expert understood the ALJ's question to mean that Plaintiff would need reminding to stay on task 2.5 hours out of every 8 hour day, he did not offer any evidence to support his answer that such an accommodation is reasonable. If "occasional" as used in this hypothetical is not being used as it is defined in the DOT, no other explanation or information was given as to its meaning. The question to the vocation expert, therefore, is vague and his answer cannot support this Step 5 decision.

(*Id.*).[16]

Leggett cites no authority to bolster this argument, and she has failed to persuade the undersigned of reversible error in this regard. Even if the VE did interpret "occasional reminder to stay on task" as encompassing the DOT definition of "occasional," the VE clearly responded to the second hypothetical that such an accommodation was reasonable and that Leggett would still be able to find work with such a limitation, with no indication of confusion or request for clarification; the ALJ accepted that answer after finding it was "consistent with the information contained in the D[OT]." (R. 29). Leggett's bare assumption that such a limitation is unreasonable if it uses the DOT definition of "occasional," in essence, asks the Court to impermissibly substitute its judgment for the Commissioner's. *Winschel*, 631 F.3d at 1178.

Leggett has failed show any reversible error in the ALJ's decision; therefore, the Commissioner's final decision denying Leggett's application for SSI is due to be

---

[16] The Commissioner agrees with Leggett's DOT definition of "occasional."

**AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision denying Leggett's March 28, 2013 application for SSI is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Final judgment shall issue separately in accordance with this order and Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the 16th day of January 2020.

> */s/ Katherine P. Nelson*
> **KATHERINE P. NELSON**
> **UNITED STATES MAGISTRATE JUDGE**